# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JOANNE BENJAMIN,

                         1:17-cv-11719-NLH

                Plaintiff,

                        **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

**APPEARANCES:**

LAUREN S. TOVINSKY
JACOBS SCHWABLE & PETRUZELLI PC
10 MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003

    *On behalf of Plaintiff*

EDA GIUSTI
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number

("SSI")[2] under Title II and Title XVI of the Social Security

Act.[3] 42 U.S.C. § 401, et seq. The issue before the Court is

whether the Administrative Law Judge ("ALJ") erred in finding

that there was "substantial evidence" that Plaintiff was not

disabled at any time since her alleged onset date of

disability, January 22, 2012. For the reasons stated below,

this Court will affirm that decision.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On October 22, 2013, Plaintiff, Joanne Benjamin,

---

of quarters of insured employment has suffered such a mental
or physical impairment that the claimant cannot perform
substantial gainful employment for at least twelve months.  42
U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social
Security Act that provides supplemental security income to
individuals who have attained age 65, or are blind or
disabled.  42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled
is the same for both DIB and SSI.  See Rutherford v. Barnhart,
399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted).
DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599,
and the parallel SSI regulations are found at 20 C.F.R. §§
416.900-416.999, which correspond to the last two digits of
the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20
C.F.R. § 416.945).  The Court will provide citations only to
the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410,
411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and
regulations governing the determination of disability are the
same for both disability insurance benefits and [supplemental
security income]," "[w]e provide citations only to the
regulations respecting disability insurance benefits").

protectively filed an application for SSI and DIB,[4] alleging

that she became disabled as of January 22, 2012.[5]  Plaintiff

claims that she can no longer work at her previous job as a

gambling cashier because she suffers from knee and shoulder

impairments, as well as a mood disorder.

    After Plaintiff's initial claim was denied on March 24,

2013, and upon reconsideration on June 28, 2014, Plaintiff

requested a hearing before an ALJ, which was held on June 16,

2016.  On August 26, 2016, the ALJ issued an unfavorable

decision.  Plaintiff's Request for Review of Hearing Decision

was denied by the Appeals Council on October 16, 2017, making

the ALJ's August 26, 2016 decision final.  Plaintiff brings

---

[4] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to
file for benefits.  That date may be earlier than the date of
the formal application and may provide additional benefits to
the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that her onset date of
disability is January 22, 2012, the relevant period for
Plaintiff's SSI claim begins with her October 22, 2013
application date, through the date of the ALJ's decision on
August 26, 2016.  See 20 C.F.R. § 416.202 (claimant is not
eligible for SSI until, among other factors, the date on which
she files an application for SSI benefits); 20 C.F.R. §
416.501 (claimant may not be paid for SSI for any time period
that predates the first month she satisfies the eligibility
requirements, which cannot predate the date on which an
application was filed).  This difference between eligibility
for SSI and DIB is not material to the Court's analysis of
Plaintiff's appeal.

this civil action for review of the Commissioner's decision.

**II.  DISCUSSION**

    **A.    Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in

its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984).  "[A] court must 'take into account whatever in the

record fairly detracts from its weight.'" Schonewolf v.

Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting

Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301,

303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB,

340 U.S. 474, 488 (1951)).

    The Commissioner "must adequately explain in the record

his reasons for rejecting or discrediting competent evidence."

Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing

Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third

Circuit has held that an "ALJ must review all pertinent

medical evidence and explain his conciliations and

rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d

112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider

and weigh all of the non-medical evidence before him.  Id.

(citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.

1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

    The Third Circuit has held that access to the

Commissioner's reasoning is indeed essential to a meaningful

court review:

        Unless the [Commissioner] has analyzed all
        evidence and has sufficiently explained

> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart,

94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial

review, a district court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-

finder." Williams, 970 F.2d at 1182.  However, apart from the

substantial evidence inquiry, a reviewing court is entitled to

satisfy itself that the Commissioner arrived at his decision

by application of the proper legal standards.  Sykes, 228 F.3d

at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir.

1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any

substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be
expected to result in death, or which has lasted or can be
expected to last for a continuous period of not less than 12
months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this
definition, a Plaintiff qualifies as disabled only if his
physical or mental impairments are of such severity that he is
not only unable to perform his past relevant work, but cannot,
given his age, education, and work experience, engage in any
other type of substantial gainful work which exists in the
national economy, regardless of whether such work exists in
the immediate area in which he lives, or whether a specific
job vacancy exists for him, or whether he would be hired if he
applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis
added).

The Commissioner has promulgated regulations[6] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-
step process is summarized as follows:

1.   If the claimant currently is engaged in substantial

_____

[6] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  Because the ALJ issued his
decision prior to that effective date, the Court must employ
the standards in effect at the time of his decision.

gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of

proof. See Wallace v. Secretary of Health & Human Servs., 722

F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of

the analysis, the burden is on the claimant to prove every

element of his claim by a preponderance of the evidence. See

id. In the final step, the Commissioner bears the burden of

proving that work is available for the Plaintiff: "Once a

claimant has proved that he is unable to perform his former

job, the burden shifts to the Commissioner to prove that there

is some other kind of substantial gainful employment he is

able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir.

1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir.

1983).

### C.    Analysis

At step one, the ALJ found that Plaintiff had not engaged

in substantial gainful activity since the alleged onset of

disability.  At step two, the ALJ found that Plaintiff's

impairments of degenerative disc disease, bilateral knee

degenerative joint disease, obesity, hypertension, left

shoulder rotator cuff tear, and left lateral epicondylitis

were severe.  At step three, the ALJ determined that neither

Plaintiff's severe impairments nor her severe impairments in

combination with her other impairments equaled the severity of

one of the listed impairments.  The ALJ then determined, at

step four, Plaintiff's residual functional capacity ("RFC"),

which the ALJ found to be the following:

> I find that the claimant has the residual functional
> capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except that she can stand or
> walk for up to 4 hours and sit for up to 6 hours in an 8-
> hour workday.  The claimant can occasionally climb ramps,
> stairs, ladders, ropes, and scaffolds.  She can

occasionally balance, stoop, crouch, and kneel. The claimant can frequently perform overhead reaching with the left upper extremity.

(R. at 52.)

The ALJ noted that Plaintiff's past relevant work as a gambling cashier was classified at the sedentary level under the Dictionary of Occupational Titles, and Plaintiff performed that job at the sedentary level.[7] Thus, because Plaintiff had the RFC to perform light work, which is a level higher than sedentary work,[8] Plaintiff was capable of performing her past

---

[7] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy."); 20 C.F.R. § 404.1567 (Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

[8] 20 C.F.R. § 404.1567 ("Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. . . .").

relevant work and was therefore not disabled.[9]

Plaintiff argues that the ALJ erred in assessing the medical evidence, particularly with regard to her treating physician, Dr. Brian Timms, and a state agency consultant, Dr. Samuel Wilchfort. Plaintiff also argues that the ALJ failed to consider her severe impairments in combination with her non-severe impairments, as well as her need to use a walker.

Plaintiff's arguments are unavailing. When considering a claimant's disability benefits claim, an ALJ's duty is to review all the pertinent medical and nonmedical evidence and explain his conciliations and rejections. 20 C.F.R. § 404.1529; Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981). The ALJ here fulfilled that duty in a meticulously thorough decision that details the record evidence and explains how all the medical evidence along with Plaintiff's testimony and subjective complaints support his ultimate conclusion that Plaintiff is not disabled.

Plaintiff's first challenge is to the ALJ's assessment of

---

[9] Because the ALJ determined at step four that Plaintiff was capable of performing her past relevant work, the ALJ did not need to reach step five in the sequential step analysis. Valenti v. Commissioner of Social Sec., 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. § 404.1520(b)-(f).

the opinion of her treating physician, Dr. Brian Timms. Plaintiff contends that Dr. Timms' opinion should have been given controlling weight, or at least more weight than the ALJ afforded. As to Dr. Timms, the ALJ found:

> In November 2013, Dr. Timms opined that the claimant was "unable to work or participate in work-like activity" (Ex. l 7F/13). Additionally, Dr. Timms stated that, although the claimant did not require an assistive device, she would have limitations in the ability to climb, stoop, bend, and lift, and these limitations would last at least one year *(Id.* at 13-14). Pursuant to SSR 96-02p, a treating source's opinion may be entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record. Dr. Timms' opinion is not entitled to controlling weight in this case. . . .
>
> [A]lthough Dr. Timms is the claimant's primary care provider, he completed this document immediately after Dr. Abbasi's first appointment with her, giving him a limited basis to assess her limitations, and, as noted above, Dr. Abbasi did not document any significant abnormalities on clinical examination. Dr. Timms also did not have an opportunity to review any prior medical documentation before completing his statement. It therefore appears that Dr. Timms based his opinion entirely on the claimant's subjective complaints and reported history, rather than his objective and professional observations. Because Dr. Timms' opinion is not well supported by objective and clinical findings and is not generally consistent with the record as a whole, I have given it little weight.

(R. at 58.)

As noted by the ALJ, a treating physician's opinions are typically entitled to "great weight," but an ALJ may reduce his reliance upon a treating physician's opinions if those opinions

are inconsistent with other medical evidence, and if he explains his reasoning. <u>Plummer v. Apfel</u>, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."); <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."); <u>Chandler v. Commissioner of Social Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c); 20 C.F.R. § 404.1527(d)(1)-(2); SSR 96-6p) (other quotations, citations, and alterations omitted) ("The ALJ - not treating or examining physicians or State agency consultants - must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, the law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity, and state agent opinions merit significant

consideration as well.").  The ALJ properly followed those

guidelines in this case.[10]

Plaintiff also argues that the ALJ erred by not explaining

the specific weight he afforded to the findings of a state

agency examiner, Dr. Samuel Wilchfort.  Plaintiff contends that

this is important because Dr. Wilchfort opined that Plaintiff

demonstrated decreased ranges of motion in the bilateral upper

extremities, and the ALJ's RFC only included a limitation on

her upper right extremity.  The Court does not find any error

by the ALJ in this regard.  Dr. Wilchfort performed his

evaluation in February 2014, and the ALJ described Dr.

Wilchfort's findings.  (R. at 54.)  Dr. Wilchfort's report was

then considered by two additional state agency consultants,

---

[10] It is also relevant to note that the referenced report by Dr.
Timms is a so-called "check-the-box" form completed in support
of Plaintiff's application for state welfare benefits.  (R. at
661-62.)  "Form reports in which a physician's obligation is
only to check a box or fill in a blank are weak evidence at
best," Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993),
and conclusions in a doctor's report as to a claimant's
disability made for a different disability program may be
disregarded by the ALJ, Hartranft v. Apfel, 181 F.3d 358, 362
(3d Cir. 1999) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d
Cir. 1984) (noting that "the ALJ could reasonably disregard so
much of the physicians' reports as set forth their conclusions
as to worker compensation claims").  The nature of Dr. Timms'
report further supports the ALJ's decision to afford it little
weight.

Mohammed Rizwan, M.D. and Nancy Simpkins, M.D., in March 2014
and June 2014 respectively. (R. at 57.) The ALJ gave the
opinions of Dr. Rizwan and Dr. Simpkins considerable weight
because they reviewed all available evidence and their opinions
were consistent with the record as a whole, including the
majority of the findings on clinical examination. (R. at 57-
58.) Thus, by reviewing Dr. Wilchfort's report, which was then
specifically considered by two other state agency examiners
whose opinions the ALJ afforded considerable weight, the ALJ
fulfilled his obligation under the regulations. See 20 C.F.R.
§ 404.1527 ("Regardless of its source, we will evaluate every
medical opinion we receive."); Plummer, 186 F.3d at 439.

Plaintiff next argues that the ALJ did not properly
consider the impact of her headaches from her hypertension or
the effects of her mood disorder on her ability to work, and
the ALJ must consider those impairments in combination with
her severe impairments even though they were not deemed
"severe." Although it is true that an ALJ must consider all
of a claimant's impairments when assessing her RFC, the non-
severe impairments must be established by credible evidence
and have demonstrable impact on a claimant's RFC. See 20
C.F.R. § 404.1545(a)(2) ("We will consider all of your

medically determinable impairments of which we are aware,
including your medically determinable impairments that are not
'severe,' as explained in §§ 404.1520(c), 404.1521, and
404.1523, when we assess your residual functional capacity."); 
Page v. Barnhart, 108 F. App'x 735, 738 (3d Cir. 2004) ("An
impairment is not severe if medical evidence establishes that
the condition has no more than a minimal impact on the
individual's ability to engage in basic work activities.").

In this case, the ALJ specifically addressed Plaintiff's
hypertension and mood disorder multiple times in the decision,
and determined how they affected Plaintiff's RFC.  For
example, after summarizing the medical evidence and
Plaintiff's complaints regarding her headaches, the ALJ noted
that Plaintiff's headaches were caused by non-compliance with
hypertension medication, and that she had a history of poorly
controlled hypertension.  The ALJ considered Plaintiff's
"history of poorly controlled blood pressure, with complaints
of headaches, occasional lightheadedness, chest pain, and
blurred vision, in assessing a residual functional capacity
for light work with four hours of standing and walking per day
and only occasional postural activities, particularly
balancing and climbing of ladders, ropes, and scaffolds," and

further noted that Plaintiff "has never been hospitalized for an acute hypertensive emergency, and there is no evidence of ischemic brain changes on end organ damage." (R. at 56.) The ALJ concluded, based on substantial evidence in the record, that "hypertension does not cause additional functional limitations." (Id.)

As for Plaintiff's mood disorder, the ALJ found that Plaintiff's mood disorder did not result in significant work-related functional limitations, noting that Plaintiff was "able to maintain concentration on a variety of daily activities, including driving, household chores, and video games. Moreover, the claimant told Dr. Coffey, the psychological consultative examiner, that she took Cymbalta only when she felt depressed, and Dr. Coffey said that she appeared to have no difficulty following the stream of conversation (Ex. l lF/2-3). Dr. Coffey did state that the claimant had problems performing calculations on mental status examination; however, he also noted that she appeared to be 'making an effort to present herself in a negative light' and that 'Her performance on the mental status examination is not at all consistent with her personal history.'" (R. at 53.)

Although Plaintiff disagrees with the ALJ's assessment of

how her headaches and mood disorder impacted her RFC, the

ALJ's assessment, in the two passages quoted and in other

parts of the decision (see, e.g., R. at 55, 57, 59, 60),[11]

complies with his obligations under the regulations and Third

---

[11] In his decision, the ALJ also assessed Plaintiff's
credibility as to how her impairments affected her ability to
work and perform daily activities. The ALJ stated that the
record contained minimal counseling or psychiatric records,
she lived alone and took care of her personal needs, she did
not progress in physical therapy because of her poor
attendance, which called into question her commitment to
improving her physical functioning, she recounted her
extensive medical history without any apparent difficulty, and
as April 2015, Plaintiff reported that she was caring for her
daughter who had a stroke, which strongly suggested that
Plaintiff's activity level was much higher than she alleged at
the hearing. These observations also show that substantial
evidence supports the ALJ's determination of Plaintiff's RFC.
See Metz v. Federal Mine Safety and Health Review Com'n, 532
F. App'x 309, 312 (3d Cir. 2013) ("Overturning an ALJ's
credibility determination is an 'extraordinary step,' as
credibility determinations are entitled to a great deal of
deference."); Schaudeck v. Comm'r of Social Security, 181 F.3d
429, 433 (3d Cir. 1999) (explaining that allegations of pain
and other subjective symptoms must be supported by objective
medical evidence, and an ALJ may reject a claimant's
subjective testimony if he does not find it credible as long
as he explains why he is rejecting the testimony); SSR 96-7p
("No symptom or combination of symptoms can be the basis for a
finding of disability, no matter how genuine the individual's
complaints may appear to be, unless there are medical signs
and laboratory findings demonstrating the existence of a
medically determinable physical or mental impairment(s) that
could reasonably be expected to produce the symptoms."); 20
C.F.R. § 416.929(c)(4) ("We will consider whether there are
any inconsistencies in the evidence and the extent to which
there are any conflicts between your statements and the rest
of the evidence . . . .").

Circuit law to explain the record evidence that supports his decision.[12]

Finally, Plaintiff argues that the ALJ's RFC finding that Plaintiff could crawl is irreconcilable with her need to use a walker prescribed by her doctor. In his decision, the ALJ squarely addressed the impact of the walker on Plaintiff's RFC. The ALJ acknowledged that Plaintiff's orthopedist as of the date of the hearing on June 16, 2016, Dr. Frankel, prescribed a walker about one week before the hearing. The ALJ noted, however, that there were no clinical notes from Dr. Frankel, Plaintiff admitted she only saw him once, and there was no evidence establishing how often or for how long Dr. Frankel recommended that Plaintiff use the walker. (R. at 56.) The ALJ further noted that in November 2014, an examining doctor appeared to have "based his recommendation for a cane on the claimant's statement that she sometimes used one, although she did not bring one to the examination with her, and there is minimal evidence to suggest that a cane or other device has been medically necessary on a consistent

---

[12] It is also relevant to note that the RFC finding is a determination expressly reserved to the Commissioner, and it is not for a treating medical source or consultative examiner to determine. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

basis since the alleged onset date." (R. at 59.) The ALJ

also afforded considerable weight to a state agency medical

consultant who found in March 2014 that Plaintiff had no

limitation on the ability to crawl. (R. at 57.)

Based on this specific analysis, the ALJ properly

considered how Plaintiff's prescription for a walker impacted

her RFC. See, e.g., Rodriguez v. Commissioner of Social

Security, 2017 WL 935442, at *7 (D.N.J. 2017) (providing that

in addressing a claimant's RFC, the ALJ need only consider

"medically required" devices, and a prescription for a cane is

not enough to demonstrate that the cane is medically necessary

(citing SSR 96-9p, "To find that a hand-held assistive device

is medically required, there must be medical documentation

establishing the need for a hand-held assistive device to aid

in walking or standing, and describing the circumstances for

which it is needed."); Howze v. Barnhart, 53 F. App'x 218, 222

(3d Cir. 2002) (demonstrating that the mention of the

plaintiff's use of a cane throughout the record and a

physician's "script" for a cane is "insufficient to support a

finding that the [Plaintiff's] cane was medically

necessary")); Southerland v. Commissioner of Social Security,

2017 WL 1246345, at *8 (D.N.J. 2017) (finding that the ALJ did

not err when she did not comment on Plaintiff's use of a cane, because it did not affect the finding that Plaintiff was capable of a sedentary job, when considered in the context of Plaintiff's daily living activities, his doctor's assessment of his standing and walking abilities, and that his need to use a cane was based on his own testimony rather than the records of a medical treatment provider) (citing <u>Smelly v. Commissioner of Social Sec.</u>, 2013 WL 3223000, at *7 (D.N.J. 2013) (citing S.S.R. 96–9p) (stating that a cane does not automatically erode a claimant's sedentary occupational base significantly); <u>Dye v. Commissioner of Social Sec.</u>, 2009 WL 3242078, at *6 (D.N.J. 2009) ("In making the step five determination, the ALJ considered that Plaintiff would be capable of only sedentary jobs, thus reflecting a view of Plaintiff's difficulties consistent with the prescription of a cane in April of 2004.")).

## III. CONCLUSION

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations. <u>Hartzell v. Astrue</u>, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal

principal is that a district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ).  The Court finds in this case the ALJ's determination that Plaintiff was not totally disabled as of January 22, 2012 is supported by substantial evidence.  The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date:  January 29, 2019            s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.